This is a situation, a case involving an employee of OSF St. Francis Hospital in Peoria. The facts are it's undisputed that she's an employee of that facility. She was injured when she slipped and fell on some debris that was in a construction zone that was going on, some rehabilitation and remodeling that was occurring at the OSF St. Francis campus. It occurred when she was exiting out of the doors of the emergency room area of the facility. Before you get into the facts, can you tell us why we have jurisdiction on this case? Oh, I'm sorry. This is an appeal from a decision by the arbitrator against the petitioner. It went up to review to the Illinois Workers' Compensation Commission, which upheld the decision of the arbitrator. Okay. Go ahead. Oh, okay. As I was saying, it occurred outside some doors that were commonly used by employees to ingress and egress the building. I thought it occurred in a parking lot in the emergency room. It was the parking lot right outside the doors of the emergency room. How far outside the doors? We're talking a matter of meters, Your Honor. Meters? I'm sorry. I'm American. How many feet? We're talking about 30 to 50 feet outside of the door. I mean, she had just walked out of the door, and within a few seconds thereafter, there was some construction debris, and she got tangled up and slipped and fell in the debris. Did you watch the Olympics? 100 meters? No. My TV converted. The facts are undisputed that the site of the injury occurred on the OSF St. Francis campus. Cindy was working at the time that the incident occurred. She was on the clock, so to speak. She was actually on a paid permissive break that OSF employees were allowed to take during the course of their employment. They were each allowed two 15-minute breaks during the course of their workday, and this is one of the breaks that Cindy was allotted during her workday. She was working as a lab technician in the outpatient services at the time that she decided to take this break. So how was she in the course of her employment? Smoking in violation of the employer's express policy? How was she in the course of her employment when she's at that point? Well, Judge, that's kind of the crux of why we're here today. We obviously feel that the act of going out and taking the break does not necessarily take her out of the course of her employment. Yes, there is this smoking policy that went into place that says as an OSF employee, you are not allowed to smoke on the OSF campus. And what was the common custom and practice of the OSF employees after this policy went into place was to walk right across the street where they're no longer on the OSF campus, take their smoke break if that's what they decided to do. Now, that's confusing to me, the geography here, because adjacent to the campus is a sidewalk or is it not adjacent? There's a sidewalk on both sides of the street, Judge. You've got a street called Berkeley that kind of borders, I guess. So which sidewalk is it that they're allowed to be on that's the campus and which sidewalk is not? Directional orientation, we're talking about the north side of Berkeley is still OSF campus. South side of Berkeley is public domain, not owned by OSF. And this is where the employees would cross over to Berkeley to the non-OSF campus side and basically line that sidewalk and smoke or stand with their friends or do whatever it is that they want to do. On a paid break, they're allowed to leave the campus? They're not allowed to leave the campus, Judge, but OSF employees do it anyway. And just to make another point, the policy specifically said they're not allowed to use tobacco products on their paid break. That's correct. Anywhere. That's correct. They're not supposed to leave the campus and they can't use tobacco products? They're not supposed to use tobacco products and they're not supposed to use tobacco products on the OSF campus. And so what employees do to get around that policy is walk across the street. It was a well-known practice that went on immediately after this smoking policy went into effect. And in doing that, by all those employees who did it, they were violating the policy, right? They were all in violation of the policy. I'm missing something here. Was this woman hurt while she was smoking? No. Was she hurt after she left the employer's property? No. The injury occurred. Is she allowed to go into the parking lot on a paid break? I don't think that there's any policy with regards to the smoking policy. No, no. I think Justice Hoffman's hitting the point. When are you in violation of your employer's policy? I think that you're The smoking policy. If you go onto any part of OSF campus to light up and smoke or you leave the I was just assuming you're violating the policy. So you're violating the policy when you begin to embark with the end being to light up a cigarette or to use tobacco. When are you in violation? In my interpretation of the policy, you're only in violation if you're smoking on OSF campus or you exited the campus to smoke. I mean, technically, the respondent's position is if you are on a break and you go out to your car to retrieve a cell phone, well, technically you've left the physical building on your break and you're violating the policy of leaving the physical building on your break. And I think that that's the result that we've got here is Cindy Relaford is exiting the building. There's obviously issues in the record of whether she has the intent to go smoke or not. But the fact is that she wasn't smoking at the time that this injury occurred. She had just exited the doors within a few seconds of this injury occurring. And I think that the intent to violate a policy, whether in fact, you know, the arbitrator has decided that her co-worker's testimony was more credible than Cindy Relaford's testimony on what her intent was. But the facts that are undisputed are she wasn't smoking at the time that the injury occurred. She hadn't violated any policy. So you're saying violation of a policy is not an action that is intending, right? I agree. I mean, if you're an employee and you're riding a forklift and you're thinking, well, you know what, I'm going to speed through the warehouse and then you decide not to do that, have you violated the warehouse's, you know, policies regarding the operation of the forklift if you didn't really do what it was that you were potentially intending to do? Well, it gets even more complicated than that because I suppose the argument your opponent is going to make and has some appeal is what duties, what work-related duties was the claimant performing? She was neither fulfilling her work-related duties or engaging in some kind of incidental tool work when she's going to smoke, setting aside the violation. So how are you arguing? She said this happened in the course of her employment. Well, the personal comfort doctrine allows an employee to do the types of incidental things such as smoking, having lunch, going to the restroom, taking a work break, getting a glass of water, all those things which are incidental. And the trump to that's going to be, again, raising the stakes, is that's true, except if it's done in some type of an unreasonable or unexpected manner, would you also agree that's the trump to the personal comfort doctrine? Certainly. I agree, though. So he's going to argue, well, because you're in violation of the policy, clearly that's unexpected and unreasonable. So now he's raised you, so how do you respond to that? In this particular case, I think that the result is certainly reasonable and foreseeable based on the course of conduct that OSF employees, including Cindy Relaford, take in leaving the OSF campus. Counsel's going to get up here and he's going to say, well, this policy was only in effect for two weeks. There's no way OSF could have known that their employees were doing this. They were doing it every single day that this policy had been in place. I have a question. Does that vitiate the policy? Certainly. I think OSF has acquiesced in its employees violating a policy. The policy has no teeth if you're allowing your employees. Why did we all get off on this smoking policy to decide this case? I mean, we're all talking about this smoking and everything. I mean, let's assume that she's on paid break, okay, and she walks outside the building and she falls. Do you automatically recover? With those limited facts, if you assume that she's on a paid break. What do you argue? What do you argue that it arose out of in the course of her employment to be able to make a claim? I think the case law would substantiate that if she's on a paid break, that she would not have necessarily exited out of the course of her employment with. There's no restriction on paid break as to where she goes, is there? I believe the policy dictates that if she leaves to smoke, she's violating the policy. Let's drop the smoking. Is there any restriction on where she goes during a paid break on the campus or off the campus, perhaps? I thought you said earlier that she was restricted to the hospital campus on a paid break. I believe that, yes, you're not allowed to leave the OSF campus on a paid break. Okay, but is there any restrictions other than that? Not that I'm aware of. On a paid break, okay. And your client comes in and says, I fell in the emergency room parking lot while I was on paid break. Correct. Okay. So tell me, does she recover or not? Or what has to be established for your client to recover? Well, under the Lynch case, the Lynch special services case. I realize you understand that the commission went on, you know, violation of policy and all of that. They went down that, perhaps, rabbit hole. And you're saying personal comfort. Well, I think under this Lynch case, which is where an employer retains complete control over an employee on a paid break, that that employee is still in the course of their employment and, therefore, would be entitled, arguably, to recovery, provided they can. Well, they're in the course of, and does it arise out? The paid break? No, the fall. The fall, the injury. Well, it occurred on a paid break. So I would say, yes, arguably, it's incidental to her employment. So any time somebody, an employee, falls on a paid break, they automatically recover? I wouldn't say it's an automatic, hard, fast rule. Well, what else is in the mix here? What else has to be established? Yes, it has to be in a circumstance where you're still under the employer's control. You would have to still be under the employer's control. But you would also have to prove that your injury is causally connected, you know, or arises out of your employment. If you prove that you're on an allotted paid break, you're not on some frolic, then you're still, I think, within the course of your employment, and you would still be arising out of an incidental act to your employment. You're on a break. Otherwise, you have an absurd situation where a person, okay, I'm going to go use the restroom. I slip and fall in the restroom and, you know, break my neck. Well, you know, using the restroom is not, you know, one of your job duties, and therefore you're not going to be entitled to any recovery because technically going to the bathroom. That is very close to the fact of this case. Certainly, Judge. She wasn't using the restroom, and I'm not trying to allude that she was. But she was on a paid break, which she was allowed to do. The employer retained control over its employees during allotted breaks. They could be called back from a break at any time to return to their workstation. And so automatically all you have to do is say I'm in the course of and therefore arose out of. That's the law? Yes. I think if you say I'm on a paid break, which is a part of the course of my employment, and I'm injured during that break, then I'm still within the course of my employment. How did it arise out of? I'm just trying to get back to basics. Do you want to talk about something else? Go ahead. To arise out of employment, the origin of the injury needs to be causally connected to the employment. Right. And how is that here? Well, she's a lab tech. She's on the clock at OSF. She's taking a break, and she slips and falls and injures herself during that break. She didn't just slip and fall. Why did she slip and fall? There was construction debris. There's a defect on the employer's property, is what she felt. Correct. Isn't that part of the reason? There's a massive multi-million dollar renovation going on right outside the area where Cindy is working, where she exits. Isn't that relevant to this? Of course it is. It's on the campus. Okay, now I think we've drawn out all of the issues. But back to what the commission's theory of denial of recovery was, that she had taken herself, violated her rule, right? Taken herself out of her employment. Yes. The commission's theory was that violating this smoking – well, actually, let me back up a little bit. The theory was that the intent to violate the policy is what took her out of the course of her employment. Because the injury had actually occurred on the property before she had even violated the policy. And so they've taken it a step further in that the intent to do something that may violate the policy – I mean, in this case, certainly it would have violated the policy. But the intent to do that is what took her out of the course of her employment. Okay, so to change the facts on you, we've got Berkeley Avenue and we've got a sidewalk across from Berkeley, which she's not supposed to be on, because that's a violation. The one that's beyond the campus. Correct. Okay, so if she's injured there while smoking, you wouldn't be here. There's no question that's outside the course of her employment. But if she's on the sidewalk adjacent, south or north of Berkeley, that's adjacent to the campus, and she's smoking a cigarette and she's injured, you wouldn't be here either. I don't think so, no. Okay. So you're saying I'm here only because when she left the door and went 30 feet and fell in the parking lot, she had not performed the act of violation of the rule? Yes. That's basically what your position is? Yes. I don't think the intent to do a violation is going to be enough to necessarily take her out of the course. Intending to do something is not violating, right? I don't think it's a violation per se, no. Kind of like in the criminal law of conspiracy. You need the agreement plus an act. Yeah. Intent plus act. But Judge, I also think if she was standing on the sidewalk on the OSF side of Berkeley and just standing there not smoking on her break, I think I'd still be here arguing that she's still in the course of her employment because she technically hasn't left the OSF campus on a paid break. Counsel, your time is up. You will just have about three minutes on rebuttal. Counsel, please. Thank you. Your Honors, if it pleases the Court, my name is Tim Newland. I'm the attorney for the respondent at OSF St. Francis Medical Center. And as we've already talked about here this morning, an important thing is July 4th, 2007, our client, OSF St. Francis Medical Center, instituted this no smoking policy, which was called the tobacco-free environment policy. And this policy specifically prohibited employees from smoking on paid breaks. That's the key we have to focus on. We can't get off on this side thing of was she on the property or not on the property. That's not the policy is you don't smoke on paid breaks. The next thing we know is that on July 25th, 2007, Cindy Relaford left the property, was going out to smoke on a paid break. She never left the property. Yes, she did. No, she didn't leave the building. She never left the property. She was injured in the parking lot. Yes, she did. Here's what she did, Your Honor. She left the door through the girlock building. She went out into the emergency room parking lot. And by the way, that was not a construction zone. That is totally not in the record. There was some gravel there. Hold on a second. She fell in the parking lot. Excuse me. Okay, excuse me. You said she never left the property. You said she left the property. She never left the property. She left the building. She did eventually leave the property, Your Honor. And she went to smoke her own cigarettes with her co-workers on the Berkeley Street sidewalk. Stop. I'm sorry. I'm sorry. She did. She crossed a public street? Yes. No, what she did was. I know what she did. She left the door of the emergency room, walked across the sidewalk, onto your parking lot, fell and was injured. She never crossed off your property. Excuse me. Well, she got up from where she fell in the parking lot and kept walking with her co-worker and went out there on the Berkeley Street sidewalk. Excuse me. Just after she's injured. So what? Okay. Okay. I'm sorry. She was injured before she ever left your property. That is correct. Okay. That is correct. That is absolutely correct. Okay. I'm sorry I misunderstood you. That's absolutely correct. Okay. Go ahead. Okay. Arbitrator Neal then at arbitration specifically found that she assumed a personal risk when she left OSF to smoke. And the commission in adopting what Arbitrator Neal found made these important findings. Employees were not allowed to smoke at any time or place during paid breaks. Not allowed to smoke at any time or place during paid breaks. And not allowed to smoke on sidewalks adjacent to the property. The commission also found, as Arbitrator Neal had, that the petitioner was aware of this policy. That's in the record as well. And the commission also found that when they were on paid break in the process of leaving the property to go smoke on the Berkeley sidewalk, that this was a clear and direct violation of OSF policy. The key to the whole case hinges on the credibility of the witnesses. And what Arbitrator Neal focused on. Hold on a second. Okay. I think you're wrong. I don't think it does. Okay. Let me give you a hypothetical question. This woman's a phlebotomist. Is that right? Yes, sir. Okay. During the course of doing her phlebotomy, whatever, you know, drawing blood from someone, she decides to light up a cigarette. While she's drawing what? While she's smoking a cigarette, she falls and she's injured. Is that compensable? Of course it is. Yeah, but your Honor. Smoking a cigarette has absolutely nothing to do with her employment duties. Absolutely right, your Honor. I agree with you. But when she's in a parking lot on her way to smoke, she's doing these things that are easy, easy, easy. One at a time, both of you. Okay. Both of you. Okay. Let's understand something. I know of no case that says the intention to violate a rule takes someone out of the course of their employment. It has to be the violation of the rule. This woman never lit a cigarette, ever, did she? Before. On your property. Okay. Correct. Okay. Your Honor, yes. Absolutely. Okay. So tell me why the intention to violate a rule takes her out of the course of her employment before she gets a chance to actually violate it. Well, she's assuming a personal risk solely for her own convenience. When she's in that parking lot, she's not doing anything in furtherance of the employer's business. She's not doing any work. She went out there with her co-worker because she wanted to go smoke in direct violation of the employer's policy. On her paid break, can she go out in that parking lot if she doesn't intend to smoke? On her paid break, can she go out there in that parking lot if she doesn't intend to smoke? I think she could. But that's not the fact. She did intend to smoke. Now we're back to the question of whether intention to violate a rule defeats compensability as opposed to an actual violation of the rule. That's the issue in this case. Not who do they believe. Who cares who they believe? The question is, does intention to violate a rule take the case outside the limit of the worker's compensation rule as opposed to an actual violation of the rule that takes you out of the course of your employment? That's what this case is about. In other words, she was doing exactly what any other employer employee would have done when she fell. Yes, she's intending to smoke. She's intending to do whatever violation of a policy. But at the time of the injury, she was in no different position than anybody else who was just walking outside for fresh air, was she? True. And she's not exposed to any risk different than the general public is. She's got nothing to do with her work. She's not performing a duty. She's making a nexus between the smoking violation and somehow it had something to do with her injury. She could have gone out for fresh air and fallen just the same if she never intended to smoke, correct? Well, I am making a nexus between the smoking policy because there's two things here. There's two things, and those are very good questions. She's intending to violate the policy, okay, and she's violating the policy. You're saying, I understand, that when she's intending to, she hasn't yet violated it. I'm glad you agree that's not the same. Intention is not the same as an active violation. Have we established that yet? Okay. You may not want to concede. I don't want to concede that, but I understand what you're saying completely. But there's clearly nothing that she's doing that's work-related when she's standing in that parking lot. Well, it's the same as any other employee. And you said a comfort break wouldn't necessarily take them out of the employment. But that's not a comfort break. When the employer specifically says, don't smoke, and you go out in the parking lot because you want to go smoke, that's not comfort. That's why that's not accurate when he says the personal comfort doctrine applies. It doesn't. Then he goes into this argument about how, you know what, the employer knew this was going on for a few weeks, and they acquiesced. Okay. The policy had only been in effect July 4th to July 25th, about three weeks there, okay? They didn't have time to develop some sort of policy of overlooking it. And then at trial, the employee argued they were never reprimanded. No, in fact, they were. Two weeks after the incident, the manager brought her into the office and coached her the first level of discipline at St. Francis as far as, you shouldn't be smoking on pay break, you know that. Yeah, okay. Well, don't do it anymore. Okay. So the idea that OSF was going along with all this is just not accurate. And I do want to say one more time, and I think maybe you've got a question here. It's really important to focus in on the credibility of witnesses, because I know you said that you didn't believe that was important. The arbitrator found that the co-worker said, yes, we intended to smoke. Yes, we intended to smoke when we left the building. That's clear. That we did it at the same time, same place there on pay break, and that was a violation of the policy. And the petitioner, plaintiff, brought her own cigarettes with her. So the idea that she can testify at trial, I think you misinterpret our question. No, I'm not. Our question is easy, easy. Okay, okay. Control yourself. Grab the side of the thing. I'm sorry. All right. Counsel, our position is it doesn't make any difference whether she intended to smoke. I understand what you're saying. The issue is whether intention to violate. I'm going to ask you a real easy hypothetical. Okay? Now, this is a hypothetical. Sure. I'm an employee of this hospital, and I'm entitled to a paid break. And I get my paid break and decide I'm going to go to the washroom. I walk in the washroom, and I trip, and I hurt myself on a defect in the floor. Is that compensable? I would say so. No, I'm going to change the facts. Okay. I'm an employee in the hospital. I'm on a paid break. I intend to go to the toilet. I go into the toilet, but on my way I light a cigarette. And I fall over the same crack in the floor. Is that compensable? Or am I barred because I violated your smoking policy? No. Which is it? Compensable or not? Let's stick to the argument of this case, gentlemen. Actually, I'd like an answer to the question, Judge. Is it compensable or isn't it? You said she smoked, and then she was on her way to the bathroom. She probably tripped out of the same crack in the floor when she had a cigarette in her mouth. Is it compensable or isn't it? Well, if the cigarette smoking contributed to her fall, then it's not compensable. If it did, it would be compensable. Okay, good. So now she's on a paid break. She's on a paid break. The cigarette smoking did not contribute to her fall because she wasn't smoking. She's no different than anyone else in that parking lot on a paid break because there's nothing that you've introduced to suggest they can't go into the parking lot. Okay. They just can't smoke while they're there. That's fair. But continue your thought again. As far as a causal link, there still isn't one there. The causal link is between the defect in the parking lot and the injuries she suffered. But there wasn't evidence that there was a defect in the parking lot, Your Honor. There's not. And this so-called construction zone is misleading. It wasn't a construction zone. He brings that up. That's not in the record. What did she fall on? Gravel, she says. And did they disbelieve her? Did the arbitrator disbelieve her? Or the commission disbelieved that she fell on gravel? I don't know that the arbitrator disbelieved her. I don't know. Just to sort of summarize your position, I think you would have to say that because she intended to violate a clear policy of the company, you believe that even though it had happened before she started smoking, she was not in the course of because she left to intend to violate the policy. That's sort of what you're saying. Yes, Your Honor. Okay. And that's fair. We understand your position. Okay. And then I guess what you're saying is there's a difference between intending to violate the policy and violating the policy. Okay. Okay. I mean, that's for us to decide. But I think we can go back and forth all morning. That's your position, whether or not we agree with it. No, no. And my position is twofold. Number one is she isn't performing any work duties when she's standing out there in the parking lot. She's not exposed to any risk different than the general public. Okay. And number two is, you know, but for her in the process of violating the policy, she never would have been in that position in the first place. She assumed a personal risk. That's what Arbitrator Neal found. She assumed a personal risk by taking herself out of the course of her employment. So if she went out for some fresh air, would she be assuming a personal risk? If she went out for some fresh air, she'd be doing exactly what she's entitled to do on paid break. Well, before she started smoking, she was doing exactly what she was entitled to do, wasn't she? Okay. Because you keep going around it. Okay. The policy doesn't say you can't go outside. It says you can't be outside to smoke. And since she had this, she could have changed her mind and never smoked at all. And we wouldn't even be here, would we? She can't smoke on paid breaks, which is exactly what she did. But when she fell, she was not smoking on a paid break, was she? You're right, Your Honor. And, Your Honor, you're right on that as well. That's the position. And I apologize. I didn't mean to be abrupt. I was not trying to get into it. Well, I mean, the point that we're trying to make here is that this case deals with a single issue, whether the intent to violate a rule takes you outside of the right to compensation under the Act as opposed to an actual violation of the rule. That's what this case is about. Just that simple. Counsel, your time is up. Okay. Thank you very much. Rebuttal. Thank you. The court will take the matter under advisory for disposition.